[Civ. No. 27414. Fourth Dist., Div. Two. Mar. 11, 1982.]

ZELLA D. BAKER et al., Petitioners, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
HELEN LEACH et al., Real Parties in Interest.

**COUNSEL**

Ron C. Gunsaulus and Timothy P. Johnson for Petitioners.

No appearance for Respondent.

Rosen, Rosen & Leavitt and Leonard Sacks for Real Parties in Interest.

**OPINION**

**KAUFMAN, J.**—Petitioners seek a writ of mandate to compel the respondent Orange County Superior Court to vacate its order denying their motion for summary judgment and to enter a new order granting the motion. The issue presented is whether the fireman's rule applies to bar recovery of damages for injuries sustained by paid-call firefighters in the course of fighting a fire.

The facts are not in dispute. On August 4, 1976, pursuant to a burn permit from the Department of Forestry an agricultural burn was commenced at the Baker Ranch in Orange County. During the course of the burn the fire went out of control and the Orange County Fire Department was called by the foreman of the Baker Ranch who was in charge of the agricultural burn.

Real parties in interest Helen Leach and Mary Park (hereafter collectively plaintiffs) were paid-call members of the Orange County Fire Department. As such if they were informed of a fire and elected to assist in fighting it they were paid the sum of $5 regardless of the length of time spent fighting the fire. They provided their own transportation to the scene of the fire and their own firefighting clothing.

Ms. Leach first volunteered to be a paid-call member of the department on October 6, 1975. Prior to the date of the Baker Ranch fire she had received 27 hours of training and had assisted previously in suppressing a number of fires. Her regular employment was as a full-time cook for the Division of Forestry.

Ms. Park, a homemaker, first volunteered to be a paid-call member of the department on October 6, 1975, and had received 16 hours of training before the date of the Baker Ranch fire. She too had assisted previously in suppressing a number of fires.

Both plaintiffs were notified of the Baker Ranch fire and elected to assist in fighting it. In the course of the fire both plaintiffs were riding in the back of a truck supplied by the department. Apparently the flames were about to envelop the truck and it had started backing up to escape the flames when plaintiffs jumped to the ground and the truck rolled over them. Each suffered multiple injuries from being run over as well as burns from the fire. Neither plaintiff would have been at the fire or on the truck were they not paid-call members of the fire department.

Plaintiffs instituted this suit against the owners and various employees of Baker Ranch, seeking compensatory and punitive damages for their injuries, alleging that defendants were guilty of negligence; violations of unspecified statutes, ordinances and regulations; and wilful misconduct in setting the fire and failing to control it. Plaintiffs' respective husbands joined in the action seeking damages for loss of consortium. Defendants moved for summary judgment[1] on the ground that liability on their part was foreclosed by the fireman's rule. The trial court denied defendants' motion and defendants petitioned this court for mandate. We issued an alternative writ and the matter is now before us for decision.

Under the so-called fireman's rule persons by whose negligence a fire exists are held not liable for injuries suffered by firemen in attempting to put out the fire. The vitality of the rule has only recently been reaffirmed and, indeed, broadened by two decisions of the California Supreme Court, *Walters v. Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609], and *Hubbard v. Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156]. However, plaintiffs here do not deny the existence of the rule, rather they contend the rule is inapplicable to volunteer paid-call firefighters. They assert the rule is applicable only to full-time professional firefighters who are paid to assume the risk whereas they characterize themselves as "part-time amateurs who obviously did not receive the training received by professional firefighters."

Defendants assert that plaintiffs by their own admission received special training in firefighting and, notwithstanding that they were to be only paid $5, having elected to engage in firefighting they assumed the known risks involved in firefighting to the same extent as the professional firefighters working beside them.

Both sides find support in the reasons for the rule, and we agree that that is the most likely source of a rational basis for decision.

Perhaps the best summary for our purposes is provided in *Walters v. Sloan, supra,* 20 Cal.3d 199. The court stated: "The rule was born almost a century ago, earning nearly unanimous acceptance. [Citations.]

---

[1]Actually this was defendants' second motion for summary judgment. Plaintiffs grumble about defendants' "laches" in failing to seek a writ following the denial of their earlier motion, but ultimately agree the legal question should be resolved at this time.

[¶] In recent years, the rule has been repeatedly attacked as being 'behind the times,' based on outdated concepts of tort liability. However, the courts in this and other jurisdiction[s] have answered the attacks, pointing out the rule is premised on sound public policy and is in accord with—if not compelled by—modern tort liability principles. [Citations.] ... [¶] [T]he fireman's rule is based on a principle as fundamental to our law today as it was centuries ago. The principle is not unique to landowner cases but is applicable to our entire system of justice—one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby. We have consistently applied this concept in our recent pronouncements in other cases of basic tort doctrine. These include cases dealing with product liability (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 145 [104 Cal.Rptr. 443, 501 P.2d 1163]), comparative fault (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 824-825 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]), and employee negligence (*Gyerman* v. *United States Lines Co.* (1972) 7 Cal.3d 488, 500 et seq. [102 Cal.Rptr. 795, 498 P.2d 1043]; see *Spencer* v. *G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 861-865 [134 Cal.Rptr. 78]). ... [¶] A second reason underlying the fireman's rule does not have a significant historical background, but rather is a modern one of public policy, adopted by progressive courts and based on fundamental concepts of justice. As succinctly stated in *Solgaard* v. *Guy F. Atkinson Co.* [1971] 6 Cal.3d 361, 369 [99 Cal.Rptr. 29, 491 P.2d 821], firemen ""cannot complain of negligence in the creation of the very occasion for [their] engagement."" (*Giorgi* v. *Pacific Gas & Electric Co.* [1968] 266 Cal.App.2d 355 ....)'" (*Walters* v. *Sloan, supra*, 20 Cal.3d at pp. 202-205; accord: *Hubbard* v. *Boelt, supra*, 28 Cal.3d at p. 484.)

In further explication of the basis for the rule and its application in California, the court in *Walters* continued: "Former Chief Justice Weintraub of the Supreme Court of New Jersey explained the principle. 'The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just.... [¶] [I]t is the fireman's business to deal with that very hazard [the fire] and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would

be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.' (*Krauth v. Geller* [(1960) 31 N.J. 270] 157 A.2d 129, 130-131.)

"California is not insensitive to its obligation to compensate public safety officers for hazards faced or for injuries received. Firemen and policemen are paid for the work they perform including preparation for facing the hazards of their professions and dealing with perils when they arise. When injury occurs, liberal compensation is provided. In addition to the usual medical and disability benefits ordinarily provided all employees covered by the Workers' Compensation Act, firemen and policemen are provided special benefits.

"First, they receive special presumptions of industrial causation as to certain disabilities. (Lab. Code, § 3212.) Second, special death benefits apply to public safety officers if they are under the Public Employees Retirement System. (Gov. Code, § 21363 et seq.) Third, if under that system or the County Employees Retirement Law of 1937, they are entitled to an optional leave of absence for up to one year with full pay. (Lab. Code, §§ 4800, 4850.) Fourth, their permanent disability benefits are fully payable despite retirement, and are not reduced by disability pensions even when both are paid for the same injury. (*City of Palo Alto v. Industrial Acc. Com.* (1965) 232 Cal.App.2d 305, 306 et seq. [42 Cal.Rptr. 822].) While the employees of some cities are not under the Public Employees Retirement System and in certain circumstances their disability benefits are offset by disability pension payments (e.g., *Symington v. City of Albany* (1971) 5 Cal.3d 23 [95 Cal.Rptr. 206, 485 P.2d 270]; *Lyons v. Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 1007 [119 Cal.Rptr. 159], it is apparent from the cases discussing the question that the special disability pensions and other benefits payable to firemen and policemen substantially exceed ordinary disability compensation benefits. (*Id.*)

"Because public agencies pay death benefits and disability compensation to the injured fireman and policeman, it is apparent that under *Witt v. Jackson* (1961) 57 Cal.2d 57, 69 et seq. [17 Cal.Rptr. 369, 366 P.2d 641], much of the recovery which would result from abolition of

the fireman's rule will finally be returned to those agencies rather than to the injured public employee. Recognizing the principle that an injured employee should not be entitled to double recovery, *Witt* held that where an employee or his survivors recover damages from a negligent third party, the employer, free from fault, is entitled to a lien against the recovery to the extent that it includes compensation benefits paid by the employer. In addition to an employer's lien, the Public Employees Retirement System may recover half of any survivor benefits paid by it. (Gov. Code, § 21450 et seq.; *Board of Administration* v. *Kuppens* (1975) 49 Cal.App.3d 758, 761 et seq. [122 Cal.Rptr. 856].)

"Additionally, abolition of the fireman's rule would burden our courts with litigation among the employer public agency, the retirement system, and the negligence insurer. Whether the employee is ultimately compensated with money derived from taxes or from insurance, the public pays the bill." (*Walters* v. *Sloan, supra,* 20 Cal.3d at pp. 205-206.)

Most of the decided cases to which our attention has been called, indeed all but one, involved full-time, professional firefighters or policemen and not surprisingly, as plaintiffs point out, the opinions uniformly mention the fact that the injured fireman or policeman was a professional or paid to undertake the very risk involved. Even in our decision of *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190 [91 Cal.Rptr. 232], reversing a judgment in favor of the injured chief of the Palm Desert Volunteer Fire Department, who was paid on the basis of the number of calls he actively participated in, we noted that the plaintiff was employed by the State of California, Department of Conservation, Division of Forestry and that he had had special training in firefighting; we referred to the plaintiff as "being at the scene in his professional capacity"; and we relied on the fact that his injury arose out of "the very hazard he was paid and trained to deal with" (*id.,* at p. 1199).

We do not believe that a valid distinction can be made in the application of the rule, at least in this case, as between "professional" and "amateur" firefighters. Both plaintiffs by their own admission had special training in firefighting, and we do not believe the question should turn upon the number of hours of training in firefighting the particular plaintiff has had. The *Walters* and *Hubbard* decisions do establish, however, that one basis for precluding tort recovery by firemen is that they are presumably adequately compensated in special salary, retire-

ment, and disability benefits for undertaking their hazardous work (hereafter, the adequate alternative compensation basis). (*Hubbard* v. *Boelt, supra,* 28 Cal.3d at p. 484; *Walters* v. *Sloan, supra,* 20 Cal.3d at pp. 204-206.)

Undoubtedly, the adequate alternative compensation basis for the fireman's rule provides a somewhat weaker justification for its application to volunteer paid-call firefighters such as plaintiffs here than to full-time public employees engaged primarily or exclusively in firefighting. Not only were plaintiffs here paid only the meager sum of $5 per call, but as volunteer paid-call firefighters they were not entitled to all of the special workers' compensation and retirement benefits recounted in the *Walters* opinion. Whether or not Ms. Leach, as a regular employee of the Division of Forestry, is under the Public Employees Retirement System we are not apprised, and whether the special death benefits provided for by Government Code section 21363 et seq. would be available to her survivors we do not know. In any event the provisions for special death benefits would not be applicable to Ms. Park. The statutory provisions for optional leave of absence for up to a year with full pay (Lab. Code, §§ 4800, 4850) would not seem applicable to plaintiffs, and we may assume, as counsel for plaintiffs assert, that disability benefits would not be fully payable to plaintiffs without reduction by amounts paid as disability pensions for the same injury. (See *City of Palo Alto* v. *Industrial Acc. Com., supra,* 232 Cal.App.2d at p. 306 et seq.)

However, volunteer firefighters injured while fighting a fire are entitled to workers' compensation benefits. (Lab. Code, § 3361;[2] *Machado* v. *Hulsman* (1981) 119 Cal.App.3d 453 [173 Cal.Rptr. 842].) They are entitled to the same special presumptions of industrial causation as full-time firemen. (Lab. Code, § 3212.) They are also entitled to receive temporary and permanent disability benefits at the maximum rate regardless of their actual earnings. (Lab. Code, § 4458.)

By expressly observing that not all firemen would be entitled to all the special workers' compensation and retirement benefits it enumer-

---

[2]That section provides: "Each member registered as an active firefighting member of any regularly organized volunteer fire department, having official recognition, and full or partial support of the government of the county, city, town or district in which such volunteer fire department is located, is an employee of such county, city, town or district for the purposes of this division, and is entitled to receive compensation from such county, city, town or district in accordance with the provisions thereof."

ated, the *Walters* court made it clear that it was not establishing eligibility for all such special benefits as a prerequisite to application of the fireman's rule. (*Walters v. Sloan, supra,* 20 Cal.3d at p. 206.) The court was simply stating one of the justifications for application of the rule, which it summarized as being that: "the special disability pensions and other benefits payable to firemen and policemen substantially exceed ordinary disability compensation benefits." (*Ibid.*) The entitlement of injured volunteer firemen to workers' compensation benefits at the maximum rate regardless of actual earnings (Lab. Code, § 4458) when coupled with their entitlement to all reasonably necessary medical treatment (Lab. Code, § 4600) goes a long way in that direction.

The other major basis for the fireman's rule articulated in *Walters* was that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby" (hereafter the assumption of the risk basis). (*Walters v. Sloan, supra,* 20 Cal.3d at p. 204.) Plaintiffs first contend that the court did not discuss the assumption of the risk basis as a currently viable basis for application of the rule but, rather, only an historical fact, and that the sole basis for application of the rule in California is the adequate alternative compensation theory previously discussed. We believe not.

First, the *Walters* court expressly referred to the assumption of the risk basis for the rule as being "based on a principle as fundamental to our law today as it was centuries ago." (*Ibid.*) Secondly, three years later in *Hubbard v. Boelt, supra,* 28 Cal.3d at page 484, in reaffirming and extending the application of the fireman's rule the court stated: "In *Walters*, we *reiterated and confirmed the rationale underlying the fireman's rule*, observing that it is based upon (*1*) *the traditional principle that 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby,'* ... and (2) a public policy to preclude tort recovery by firemen or policemen who are presumably adequately compensated (in special salary, retirement, and disability benefits) for undertaking their hazardous work ...." (Italics added.)

Next, plaintiffs claim that the assumption of the risk basis for the rule is also dependent upon compensation. Again, we believe not. There was no suggestion in the court's statement of that basis for the rule in either *Walters* or *Hubbard* that it was dependent on compensation. It is true that the court in *Walters* did say that "[t]he rule finds its *clearest application* in situations like that before us—a person who, fully aware of the hazard created by the defendant's negligence, voluntarily con-

fronts the risk *for compensation.*" (*Walters* v. *Sloan, supra*, 20 Cal.3d at p. 204; italics added.) But, of course, that was the fact in the case before the court, and it is certainly true that the *clearest application* of the rule is in a situation in which the hazard is knowingly confronted for compensation. A full reading of the court's discussion of the assumption of the risk basis for the rule in *Walters*, however, discloses no intent on the part of the court to limit the assumption of the risk basis for the rule to cases in which the risk was assumed for compensation. Moreover, although the meager compensation offered could hardly have been the motivating factor for plaintiffs' agreeing to take part in fighting the Baker Ranch fire, if compensation is said to be a requirement, it cannot be entirely ignored that plaintiffs were to receive compensation, albeit meager.

Next, plaintiffs deprecate the assumption of the risk basis for the fireman's rule, asserting that today assumption of the risk is "a limited, partial defense which is disfavored and rarely, if ever, operates as a complete bar to recovery." Plaintiffs' assessment of the continued viability of the defense of assumption of the risk is correct in part but seriously mistaken in other part.

It is now well recognized that the expression "assumption of the risk" as it was formerly used encompassed two quite different situations: (1) where the plaintiff unreasonably undertook to encounter a specific known risk imposed by another's negligence—a form of contributory negligence; and (2) where, primarily for policy reasons, the plaintiff's conduct or the circumstances were said to negate the defendant's duty of care. (*Li* v. *Yellow Cab Co., supra*, 13 Cal.3d at pp. 824-825; *Grey* v. *Fibreboard Paper Products Co.* (1966) 65 Cal.2d 240, 245-246 [53 Cal.Rptr. 545, 418 P.2d 153]; see *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 368-369 [104 Cal.Rptr. 566]; see also *Daly* v. *General Motors Corp.* (1978) 20 Cal.3d 725, 735 [144 Cal.Rptr. 380, 575 P.2d 1162].)   █   It is only in those cases in which the asserted "assumption of the risk" is in truth nothing more than a variant of contributory negligence that the defense has been abolished as a total defense and put into its proper place in the scheme of comparative fault now in force in California. (See *Daly* v. *General Motors Corp., supra*; *Li* v. *Yellow Cab Co., supra*, 13 Cal.3d 804; *Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680, 685 [146 Cal.Rptr. 702]; cf. *Cooper* v. *National Railroad Passenger Corp.* (1975) 45 Cal.App.3d 389, 394, fn. 2 [119 Cal.Rptr. 541, 76 A.L.R.3d 1210], disapproved on another point in *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 401, fn. 8 [143 Cal.Rptr. 13, 572 P.2d

1155].) Conduct of an injured party or circumstances that for policy reasons are deemed to negate the existence of the usual duty to exercise reasonable care remain a viable and complete defense to an action for damages for injuries resulting from negligence. (*Daly* v. *General Motors Corp., supra*; *Li* v. *Yellow Cab Co., supra*; *Paula* v. *Gagnon, supra*.)

■■■ The crucial question, therefore, is whether the assumption of the risk basis for the fireman's rule is properly characterized as just a variant of contributory negligence or "true" assumption of the risk—a negation of the duty to exercise reasonable care on the part of the person responsible for the fire. There can be no question but that it is the latter. That is the teaching of the *Walters* opinion viewed in the light of the well- established principle of negligence law that the determination as to whether or not a duty to exercise reasonable care exists is essentially a question of public policy (see, e.g., *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal. Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R. 3d 596]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]).

First of all, in citing [13 Cal.3d] pages 824-825 of the *Li* decision in connection with its statements that the assumption risk principle is "as fundamental to our law today as it was centuries ago" (*Walters* v. *Sloan, supra*, 20 Cal.3d at p. 204) and its statement that the principle "is applicable to our entire system of justice" (*ibid.*), the *Walters* court could only have been referring to the kind of assumption of tne risk referred to at those pages of the *Li* opinion as involving "'a reduction of defendant's duty of care'" (*Li* v. *Yellow Cab Co., supra*, 13 Cal.3d at pp. 824-825, quoting from *Grey* v. *Fibreboard Paper Products Co., supra*, 65 Cal.2d at pp. 245-246). The court could not have been referring to the kind of "assumption of risk" that is only a variant of contributory negligence, because that was abolished as an absolute defense by *Li*, the very case cited. (See *Daly* v. *General Motors Corp., supra*, 20 Cal.3d at p. 735.)

Secondly, shortly after citing *Li* the *Walters* court quoted at length from former Chief Justice Weintraub of the Supreme Court of New Jersey in *Krauth* v. *Geller, supra*, 31 N.J. 270 [157 A.2d at pp. 130-

131] who, in explaining the basis for the fireman's rule, stated in relevant part that "[t]he question is ultimately one of public policy .... In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid." (*Walters* v. *Sloan, supra,* 20 Cal.3d at p. 205.)

We conclude that the type of assumption of the risk underlying the fireman's rule is that negating the duty of care, and that, as such, the principle involved is as viable today as ever it was.

Plaintiffs point out that they have alleged that defendants were guilty of violations of statutes, ordinances and regulations and that the doctrine of assumption of the risk is not generally applicable where the negligence of the defendant is based on a violation of statutory law. Plaintiffs state the rule a bit too broadly. A correct statement of the rule is that assumption of the risk will not bar recovery when the negligence involved the violation of statutory law that was enacted to protect a class of persons of which the plaintiff is a member. (See *Hubbard* v. *Boelt, supra,* 28 Cal.3d at pp. 485-486; *Walters* v. *Sloan, supra,* 20 Cal.3d at pp. 206-207.) Plaintiffs here have not specified the statutory or regulatory provisions they claim to have been violated but obviously the provisions alluded to relate to the time and method of igniting and controlling fires set for industrial or agricultural purposes. We are confident that the purpose of such statutory and regulatory provisions is to prevent the spread of fire for the protection of the persons and property of the general public, not firemen. (Cf. *Hubbard* v. *Boelt, supra,* 28 Cal.3d 480; *Walters* v. *Sloan, supra,* 20 Cal.3d 199.)

Of the two major bases for the fireman's rule set forth in *Walters,* we conclude that one is fully applicable and the other is applicable in part to the case at bench. In addition, the *Walters* court mentioned two other policy considerations supporting its determination that the fireman's rule should apply in California. First, "[b]ecause public agencies pay death benefits and disability compensation to the injured firemen and policemen, it is apparent that under *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 et seq. [17 Cal.Rptr. 369, 366 P.2d 641], much of the recovery which would result from abolition of the fireman's rule will finally be returned to those agencies rather than to the injured public employee." (*Walters* v. *Sloan, supra,* 20 Cal.3d at p. 206.) Second, "abolition of the fireman's rule would burden our courts with litigation among the employer public agency, the retirement system, and the negligence insurer. Whether the employee is ultimately compensated with money derived

from taxes or from insurance, the public pays the bill." (*Ibid.*) Both these reasons also have substantial application to the case at bench.

Finally, another consideration mentioned by defendants appears to us to be entitled to some weight. Defendants suggest that if liability to paid-call firefighters for injuries received in fighting a fire is imposed upon the persons negligently responsible for the fire, persons such as defendants may be reluctant to call upon fire departments promptly for assistance in suppressing a fire such as the one involved in the case at bench for fear of suffering at the very least one or more lawsuits and, possibly, crippling financial liability. As they correctly point out, such persons will have no way of knowing whether firemen who respond to a call for assistance are paid-call firemen or regular firemen.

For all the foregoing reasons, we conclude that the fireman's rule is applicable to the plaintiffs in the case at bench and that the motion for summary judgment should have been granted. Accordingly, let a peremptory writ of mandate issue to the Orange County Superior Court commanding it to vacate its order denying defendants' motion for summary judgment and to enter a new order granting the motion and thereafter to dismiss the action. The alternative writ heretofore issued, having served its function, is discharged. In the interests of justice, the parties shall bear their own respective costs of this proceeding.

Morris, Acting P. J., and McDaniel, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied May 27, 1982. Bird, C. J., was of the opinion that the petition should be granted.