[No. S033049. Oct. 27, 1994.]

CRAIG NEIGHBARGER et al., Plaintiffs and Appellants, v.
IRWIN INDUSTRIES, INC., Defendant and Respondent.

534

COUNSEL

Preston Easley and Scott Sayre for Plaintiffs and Appellants.

Allan B. Weiss and James D. Turner for Defendant and Respondent.

Fred J. Hiestand as Amicus Curiae on behalf of Defendant and Respondent.

OPINION

MOSK, J.—This case presents the question whether a private safety employee who has occasional firefighting duties may state a cause of action against a third party, not the employer, for injuries caused by the third

party's negligence in starting a fire. We conclude that a private safety employee may state such a cause of action, and that such a claim is not barred by the firefighter's rule or the doctrine of assumption of risk.

## FACTS

Plaintiffs Craig Neighbarger and John Magana were employees of Powerine Oil Company. Neighbarger was employed as a safety supervisor and had special training in industrial firefighting. John Magana was a safety supervisor who also had training in emergency response to toxics spills and petroleum firefighting. Both men's job duties included responding to emergencies at the Powerine refinery, belonging to and participating in the Powerine fire brigade, issuing "hot work permits," and conducting safety orientations for refinery contractors, visitors, and employees.

Irwin Industries, Inc., provided maintenance services at the Powerine refinery under contract with Powerine. Powerine employees directed Irwin employees George Short and Robert Brown to remove piping and install a blind flange on a valve in an area of the Powerine refinery. Short and Brown noticed that the valve was plugged and Short, in violation of industry safety standards, used a sharp instrument to dislodge the blockage. The valve released a flammable petroleum product.

Neighbarger was supervising work nearby on a fluid catalytic "cracker" unit. He had his back to the accident site and was not wearing any protective firefighting equipment. Magana was in the vicinity supervising the vacuuming of drains; he also was without protective clothing or equipment. Neighbarger heard a noise coming from the valve, and, believing it might be caused by escaping water vapor, moved toward the valve in an attempt to close it. Magana also heard the noise of escaping liquid and saw Neighbarger moving toward the valve; he reached up to try to close the valve. The liquid petroleum product ignited and burned both Neighbarger and Magana.

After Neighbarger and Magana instituted their lawsuit seeking compensation for injuries they alleged were caused by the negligence of Irwin's employees, defendant Irwin moved for summary judgment on the grounds that Neighbarger and Irwin had assumed the risk of the injury and that their action was barred by the firefighter's rule. Plaintiffs countered that the firefighter's rule was inapplicable because they were not public employees, they were not called to the scene in response to the accident, they were not acting as firefighters, they were not initially aware of the hazard involved and they were not confronting the type of risk for which they received compensation. The trial court granted defendant's motion for summary judgment, and plaintiffs renewed their contentions in the Court of Appeal.

The majority in the Court of Appeal declared that a private safety employee assumes the risk of injury that occurs when the employee responds to emergencies on the job. Applying the plurality view of primary assumption of risk outlined in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*), the majority found that defendant did not owe plaintiffs a duty of care, and affirmed the judgment of the trial court granting defendant's motion for summary judgment.

The dissent maintained that the majority had extended the firefighter's rule beyond theoretical underpinnings that limit the rule to public employees. The dissenter also declared that even if a privately employed firefighter assumes the risk of confronting negligently caused fires, there were triable issues of fact remaining in this case on the question whether private employees with marginal or tangential firefighting duties, who were confronted with a fire in the course of unrelated duties, should be held to assume the risk of injury from such a fire.

## DISCUSSION

■ The central question to be answered in this case is whether defendant Irwin Industries and its employees owed a duty of care to plaintiffs.

■ We all have the duty to use due care to avoid injuring others. (*Knight, supra*, 3 Cal.4th at p. 315.) Civil Code section 1714, subdivision (a), provides that "[e]very one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself."

The duty to avoid injuring others normally extends to those engaged in hazardous work. Thus, for example, both publicly and privately employed highway workers, who face the obvious occupational hazard of working in the middle of traffic, may recover for injuries caused by a third party's negligent driving. (See *Roddy* v. *American Smelting etc. Co.* (1939) 34 Cal.App.2d 457 [93 P.2d 841]; *Mecham* v. *Crump* (1934) 137 Cal.App. 200 [30 P.2d 568].)[1]

One also generally owes a duty of care to bystanders who attempt a rescue that becomes necessary due to one's own negligence. Thus, although it is

---

[1]An employee who is injured in the course of employment by the negligence of a third party, not the employer, may sue the third party for damages. (*Rodgers* v. *Workers' Comp. Appeals Bd.* (1984) 36 Cal.3d 330, 334 [204 Cal.Rptr. 403, 682 P.2d 1068]; 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed. 1993) § 11.20[2], p. 11-61.)

contributory negligence unreasonably to expose oneself to a risk created by the defendant's negligence (*Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 824 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]; Rest.2d Torts, § 466, subd. (a); 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1059, p. 457), a person is not contributorily negligent who, with due care, encounters the risk created by the defendant's negligence in order to perform a rescue necessitated by that negligence. (*Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 368 [99 Cal.Rptr. 29, 491 P.2d 821]; see also Rest.2d Torts, *supra*, § 472; Prosser & Keeton on Torts (5th ed. 1984) § 44, p. 307; § 48, p. 491; 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 1061, pp. 459-461.)

■ Under the general rule of duty, then, Irwin and its employees had a duty to avoid negligently injuring Powerine employees. Any exception to the general rule must be based on statute or clear public policy. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Defendant urges that it should be excused from the usual duty of care under the public policy expressed in the doctrine of assumption of risk and the so-called firefighter's rule.

The doctrine of assumption of risk has been somewhat tangled, but we recently attempted to clarify it in *Knight, supra,* 3 Cal.4th 296. In that case we examined the claim of a plaintiff who sought compensation for injuries she suffered during a recreational touch-football game. We barred recovery, and the opinion explained that in recreational sports events a participant owes no duty of care to another participant to avoid careless conduct that frequently occurs during vigorous participation in the sport.

However, we disapproved earlier cases that applied the doctrine as a bar to liability on the basis of plaintiff's subjective, voluntary assumption of a known risk. We concluded that such situations had been subsumed by the doctrine of comparative negligence. (*Knight, supra,* 3 Cal.4th at p. 315.) The opinion rejected the theory that a plaintiff implicitly consents to undertake the risk of injury despite the defendant's duty of care, declaring that "[i]t may be accurate to suggest that an individual who voluntarily engages in a potentially dangerous activity . . . 'consents to' or 'agrees to assume' the risks inherent in the activity . . . itself . . . . But it is thoroughly unrealistic to suggest that, by engaging in a potentially dangerous activity . . . , an individual consents to (or agrees to excuse) a breach of duty by others that increases the risks inevitably posed by the activity . . . itself, even where the participating individual is aware of the possibility that such misconduct may occur." (*Id.* at p. 311.) We provided the example of driving a motor

vehicle; we all realize that driving is a risky activity, and that we may be injured by the negligence of another driver, but we do not assume the risk of another's negligence when we choose to drive. (*Id.* at pp. 311-312.)

The opinion concluded that the doctrine of assumption of risk properly bars a plaintiff's claim only when it can be established that, because of the nature of the activity involved and the parties' relationship to the activity, the defendant owed the plaintiff no duty of care. (*Knight, supra*, 3 Cal.4th at pp. 313, 314-315.)

We have never held that the doctrine of assumption of risk relieves all persons of a duty of care to workers engaged in a hazardous occupation. Nonetheless, a special rule has emerged limiting the duty of care the public owes to firefighters and police officers. ■ Under the firefighter's rule, a member of the public who negligently starts a fire owes no duty of care to assure that the firefighter who is summoned to combat the fire is not injured thereby. (*Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202 [142 Cal.Rptr. 152, 571 P.2d 609] (*Walters*); see also 6 Witkin, Summary of Cal. Law, *supra*, Torts, § 739, p. 69; Levy et al., California Torts (1993) § 1.03[4] [b], p. 1-29.)[2] Nor does a member of the public whose conduct precipitates the intervention of a police officer owe a duty of care to the officer with respect to the original negligence that caused the officer's intervention. (*Walters, supra*, 20 Cal.3d 199; *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156].)

The firefighter's rule, however, is hedged about with exceptions. The firefighter does not assume every risk of his or her occupation. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 366, 371 [182 Cal.Rptr. 629, 644 P.2d 822].) The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. (*Ibid.*, see also Civ. Code, § 1714.9, subd. (a); 6 Witkin, Summary of Cal. Law, Torts, *supra*, §§ 741, 742, pp. 72-75; Levy et al., California Torts, *supra*, § 1.03[4] [b], p. 1-30.)

The firefighter's rule should not be viewed as a separate concept, but as an example of the proper application of the doctrine of assumption of risk, that is, an illustration of when it is appropriate to find that the defendant owes no duty of care. (See *Knight, supra*, 3 Cal.4th at pp. 308-309, fn. 5.)

---

[2]The firefighter's rule obviously is an exception to the rescue rule noted above. (See maj. opn., *ante*, p. 537, see also *Solgaard* v. *Guy F. Atkinson Co., supra*, 6 Cal.3d at p. 368; Harper et al., The Law of Torts (1986) § 21.1, p. 208, fn. 28; Speiser et al., The American Law of Torts (1987) § 14:67, pp. 143-144.)

Accordingly, we examine the case law establishing the rule to discover the policy basis for waiving the usual duty of care and to determine whether such a policy justifies exonerating defendants from their usual duty of care in the case of private safety employees.

An early application of the firefighter's rule in California occurred in *Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355 [72 Cal.Rptr. 119], in which the court barred the suit of several federal "fire suppression personnel" injured in the course of fighting a fire caused by defendant's negligence. Refusing to justify the rule on the theory of the firefighters' status as licensees rather than invitees on the land, the court embraced the rule on the basis of a public policy precluding recovery for those who are injured by the very hazard they have been employed to confront. (*Id.* at pp. 359-360.)

Two years later, Justice Kaufman, writing for the Court of Appeal, explained, in the context of a case involving a firefighter's claim for injuries caused by the explosion of a gas main, that the policy basis for the firefighter's rule is fairness. It is the firefighter's business to deal with the hazard of fire, the court held, and he or she cannot complain of the reason for his or her employment, whether it be fire or explosion that causes the injury. (*Scott* v. *E. L. Yeager Const. Co.* (1970) 12 Cal.App.3d 1190, 1195 [91 Cal.Rptr. 232].)

We reiterated the policy concerns expressed in these two Court of Appeal opinions in *Walters*, *supra*, 20 Cal.3d 199. We affirmed the firefighter's rule against a challenge that it was inconsistent with the principles of comparative fault, offering two justifications for our conclusion. First, we declared that even after the adoption of comparative fault, one who knowingly encounters a hazard cannot recover for injuries caused by the hazard, and gave as one example of this proposition the doctrine of assumption of risk. "The rule finds its clearest application in situations like that before us—a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation." (*Id.* at p. 204.) Of course, this discussion must be read in light of the refinement of our understanding of assumption of risk offered in *Knight*, *supra*, 3 Cal.4th 296; comparative fault is the proper measure of plaintiff's conduct in assuming the risk of a hazard unless it can be said that, for policy reasons, defendant owes the plaintiff no duty of care.

The second justification we offered in *Walters*, *supra*, 20 Cal.3d 199, was public policy. Several strands of thought are included in our policy discussion. First, we explained that as a matter of fairness, police officers and

firefighters may not complain of the very negligence that makes their employment necessary. (*Id.* at pp. 204-205.) We declared that "negligence in causing a fire furnishes no basis for liability to a professional fireman injured fighting the fire. Firemen 'whose occupation by its very nature exposes them to particular risks of harm, " 'cannot complain of negligence in the creation of the very occasion for [their] engagement.' " ' " (*Id.* at p. 202.)

Next, we pointed out that public safety employees receive special public compensation for confronting the dangers posed by the defendants' negligence. (*Walters*, *supra*, 20 Cal.3d at pp. 205-206.) Finally, we feared that the abolition of the firefighter's rule would embroil the courts in relatively pointless litigation over rights of indemnification among the employer, the retirement system, and the defendants' insurer. (*Id.* at p. 206.)

In reviewing these policy considerations, we quoted at length from the thoughtful decision of the New Jersey Supreme Court: " 'The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. . . . [¶] [I]t is the fireman's business to deal with that very hazard [the fire] and hence, perhaps by analogy to the contractor engaged as an expert to remedy dangerous situations, he cannot complain of negligence in the creation of the very occasion for his engagement. In terms of duty, it may be said there is none owed the fireman to exercise care so as not to require the special services for which he is trained and paid. Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling.' " (*Walters*, *supra*, 20 Cal.3d at p. 205, quoting *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129, 130-131].)

We confirmed these policy bases for the firefighter's rule in two subsequent cases. In *Hubbard* v. *Boelt*, *supra*, 28 Cal.3d 480, we held that a police officer was barred from recovery under the firefighter's rule when he was injured in an accident that followed upon a high speed chase with defendant. We explained that in addition to the principle, now refined by *Knight*, *supra*, 3 Cal.4th 296, that one who has voluntarily confronted a known risk cannot recover for injuries, there is "a public policy to preclude tort recovery by firemen or policemen who are presumably adequately compensated (in special salary, retirement, and disability benefits) for undertaking their hazardous work . . . ." (*Hubbard* v. *Boelt*, *supra*, 28 Cal.3d at p. 484.)

In *Lipson* v. *Superior Court, supra*, 31 Cal.3d 362, the court confirmed the rationale for the firefighter's rule, but circumscribed the scope of the rule. We refused to apply it to bar recovery by a firefighter who was called to respond to a chemical boilover at a chemical plant, but who failed to take adequate measures to protect himself from harm because defendant misled him as to the nature of the risk presented by the chemicals. We emphasized the general rule, referred to above, that "all persons owe a duty of care to avoid injury to others unless public policy clearly requires that an exception be made." (*Id.* at p. 372.) Warning that the firefighter does not assume every possible risk he or she may encounter in the course of employment, but only those risks that necessitated summoning the firefighter to the scene (*id.* at pp. 366, 369, 371), we concluded "a fireman can recover damages for personal injuries sustained as a result of a defendant's negligent or intentional misrepresentation of the nature of the hazard which the fireman is called to confront. While the fireman's rule shields a defendant from liability for negligently or recklessly causing or for failing to prevent a fire, it does not provide protection to a defendant who commits independent acts of misconduct after the firefighters have arrived on the premises." (*Id.* at p. 373, fn. omitted.)

Having examined the case law establishing the scope of the firefighter's rule, we turn now to the question whether the rule, or the broader doctrine of assumption of risk, should apply to exonerate the defendant from a duty of care to privately employed safety workers.

As we have explained, the proper basis for the firefighter's rule after *Knight, supra*, 3 Cal.4th 296, is a legal conclusion that the person who starts a fire owes no duty of care to the firefighter who is called to respond to the fire. (*Id.* at pp. 309-310, fn. 5; see also *Donohue* v. *San Francisco Housing Authority* (1993) 16 Cal.App.4th 658, 663 [20 Cal.Rptr.2d 148].) After *Knight, supra*, 3 Cal.4th 296, the rule cannot properly be said to rest on the plaintiff firefighter's voluntary acceptance of a known risk of injury in the course of employment, and we disregard that element of the justification for the rule offered in *Walters, supra*, 20 Cal.3d 199, and other cases. Rather, in order to determine whether the defendant owes a duty to a private firefighter, or to a private safety employee, we examine whether the policy reasons offered for the rule in the context of the public employee apply in the private sector. We also keep in mind, as we directed in *Knight, supra*, 3 Cal.4th 296, the nature of the defendant's activities and the relationship of the plaintiffs and the defendant to that activity to decide whether, as a matter of public policy, the defendant should owe the plaintiffs a duty of care.

In *Walters, supra*, 20 Cal.3d 199, 204-205, we expressed the view that it is somehow unfair to permit a firefighter to sue for injuries caused by the

negligence that made his or her employment necessary. (See also *Knight, supra,* 3 Cal.4th at p. 309, fn. 5.) Many courts have agreed with this observation. (See *Pottebaum* v. *Hinds* (Iowa 1984) 347 N.W.2d 642, 645, 646; *Flowers* v. *Rock Creek Terrace* (1987) 308 Md. 432 [520 A.2d 361, 367-368]; *Kreski* v. *Modern Wholesale Elec. Supply* (1987) 429 Mich. 347 [415 N.W.2d 178, 187]; *Steelman* v. *Lind* (1981) 97 Nev. 425 [634 P.2d 666, 667].) The illustration of this point given in *Walters, supra,* 20 Cal.3d 199, and other cases, is of a contractor who is hired to remedy a dangerous situation; such a private contractor, as a matter of fairness, should not be heard to complain of the negligence that is the cause of his or her employment. (*Id.* at p. 205; see also *Giorgi* v. *Pacific Gas & Elec. Co., supra,* 266 Cal.App.2d at p. 359; *Anicet* v. *Gant* (Fla.Dist.Ct.App. 1991) 580 So.2d 273, 276-277; *Berko* v. *Freda* (1983) 93 N.J. 81 [459 A.2d 663, 666]; *Krauth* v. *Geller, supra,* 157 A.2d at p. 131.) In effect, we have said it is unfair to charge the defendant with a duty of care to prevent injury to the plaintiff arising from the very condition or hazard the defendant has contracted with the plaintiff to remedy or confront.

On the surface, the fairness element of the firefighter's rule would seem to apply equally to public firefighters and private safety employees, as both are employed to confront and control hazards that may be created by the negligence of others. However, the firefighter's rule was not intended to bar recovery for all hazards that are foreseeable in the employment context, but to eliminate the duty of care to a limited class of workers, the need for whose employment arises from certain inevitable risks that threaten the public welfare. An industrial safety supervisor faces a much broader range of risks, many of which we should be reluctant to regard as inevitably ripening into injury-causing accidents. Fire is inevitable, but industrial accidents, as a broader category, are not equally inevitable. Although we were prepared to admit that almost all fires can be traced to someone's negligence, and that it is simply too burdensome to identify that negligence for the purpose of compensating those most likely to be injured by fire (*Walters, supra,* 20 Cal.3d at p. 205), we should be hesitant to narrow the duty of care to avoid industrial accidents.

More generally, if we focus on the defendant and the question of the defendant's duty toward plaintiff, we see that the third party defendant stands in a different relation to the private safety worker than members of the public stand to the public firefighter.

When the firefighter is publicly employed, the public, having secured the services of the firefighter by taxing itself, stands in the shoes of the person who hires a contractor to cure a dangerous condition. In effect, the public

has purchased exoneration from the duty of care and should not have to pay twice, through taxation and through individual liability, for that service. (See *Kreski* v. *Modern Wholesale Elec. Supply, supra,* 415 N.W.2d at p. 187; *Steelman* v. *Lind, supra,* 634 P.2d at p. 667; *Berko* v. *Freda, supra,* 459 A.2d at p. 666; see also Comment, *The Fireman's Rule: Defining its Scope Using the Cost-Spreading Rationale* (1983) 71 Cal.L.Rev. 218, 219, 236; 5 Harper et al., The Law of Torts, *supra,* § 27.14, p. 266.) But when a safety employee is privately employed, a third party lacks the relationship that justifies exonerating him or her from the usual duty of care. The third party, unlike the public with its police and fire departments, has not provided the services of the private safety employee. Nor has the third party paid in any way to be relieved of the duty of care toward such a private employee. Having no relationship with the employee, and not having contracted for his or her services, it would not be unfair to charge the third party with the usual duty of care towards the private safety employee.

In *Walters, supra,* 20 Cal.3d 199, apart from examining the question of fairness, we also expressed the concern that to permit firefighters to bring actions for injury caused by responding to a fire would involve the parties in costly litigation over rights of subrogation without substantially benefiting the firefighter, who is compensated either by the retirement system or the worker's compensation system. (*Id.* at p. 206.) We also pointed out that the public will pay the bill, whether the firefighter is compensated by public benefits derived from taxation, or from insurance proceeds that must be purchased. (*Ibid.*) Our concern to relieve various public agencies of the burden of lawsuits over rights of subrogation that are pointless because the public fisc ultimately pays regardless of the outcome does not apply in the case of private safety employees. As the dissent in the Court of Appeal in this case pointed out, "litigation by *private* firefighters will shift the financial loss of the private firefighter's injuries from the innocent firefighters and their employer . . . and place that burden squarely on the employee (and his employer) whose negligence caused the injuries."[3]

The final contrast between the public firefighter and the private safety employee is that the latter does not receive the special pay, disability and retirement benefits that a public safety officer receives. We relied on these special benefits as a justification for the firefighter's rule in *Walters, supra,* 20 Cal.3d 199, 205-206. Defendant urges, however, that public compensation is not a prerequisite to the application of the firefighter's rule. In support, defendant notes that the rule applies to bar recovery on the part of

---

[3] Of course, private employers are entitled to subrogation from tortfeasors for workers' compensation benefits made necessary by the defendants' negligence. (See Lab. Code, § 3852.)

volunteer firefighters, and that the rule has been extended to apply to a whole class of private workers: veterinarians and their assistants.

It is true that in a case involving what were essentially volunteer firefighters, who were paid a meager $5 per call for their firefighting services, the Court of Appeal held that such firefighters were barred from recovery by the firefighter's rule. The Court of Appeal pointed out that in *Walters, supra,* 20 Cal.3d 199, we did not make eligibility for special public benefits a prerequisite for the application of the firefighter's rule. (*Baker* v. *Superior Court* (1982) 129 Cal.App.3d 710, 717-718 [181 Cal.Rptr. 311].) Rather, it was explained, the main basis for our decision was the conclusion that, as a matter of public policy, no duty is owed the firefighter. The public policy basis for the rule, the court explained, is that set out in the New Jersey Supreme Court opinion we quoted in *Walters, supra,* 20 Cal.3d at page 205: firefighters " ' " " 'cannot complain of negligence in the creation of the very occasion for [their] engagement,' " ' " and it is simply too burdensome to "charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences." (*Krauth* v. *Geller, supra,* 157 A.2d at p. 131.) The Court of Appeal emphasized the public need for firefighting services, and pointed out the danger that if the public owed a duty of care to the firefighters that serve it, people might be reluctant to call for assistance when they need it. The court decided that these policy considerations apply fully to amateur, volunteer firefighters who serve the public as well as to professional, publicly employed firefighters. (*Baker* v. *Superior Court, supra,* 129 Cal.App.3d at p. 721.)

We believe that defendant misses the point of this decision. It was not the amount of public compensation that was determinative in *Baker* v. *Superior Court, supra,* 129 Cal.App.3d 710, but the relationship between the public and the firefighters who serve it. The public nature of the service, combined with the understanding that the public good is best served by a quick response to fires without questions asked as to the cause of the fire, warrant a conclusion that the public should owe no duty of care to its firefighters, whether or not they are well paid. However, when a private safety employee seeks to recover against a third party for negligently inflicted injuries, the relationship between the parties and considerations of the public good that justify a relaxation of the general duty of care for public firefighters are simply lacking.

As defendant notes, the firefighter's rule, or more accurately, the doctrine of assumption of risk, has been held generally to exempt those who contract with veterinarians to treat their dogs from liability should the dog bite the

veterinarian during treatment. (See *Cohen* v. *McIntyre* (1993) 16 Cal.App.4th 650 [20 Cal.Rptr.2d 143] [veterinarian]; *Willenberg* v. *Superior Court* (1986) 185 Cal.App.3d 185 [229 Cal.Rptr. 625] [same]; *Nelson* v. *Hall* (1985) 165 Cal.App.3d 709 [211 Cal.Rptr. 668] [veterinary assistant].) Although the elements of public service and public compensation are missing, the "defendant's ordinary duty of care is *negated* due to the nature of the activity and the relationship of the defendant to the plaintiff." (*Cohen* v. *McIntyre, supra,* 16 Cal.App.4th at p. 655, fn. omitted.) Further, the court pointed out that "the risk of being attacked or bitten in the course of veterinary treatment is an occupational hazard which veterinarians accept by undertaking their employment and are in the best position to guard against by taking the necessary precautions. 'The risk of dog bites during treatment is a specific known hazard endemic to the very occupation in which plaintiff voluntarily engaged.'" (*Id.* at p. 655.)

To the extent this "veterinarian's rule" is based on the veterinarian's subjective acceptance of the foreseeable occupational hazard of dog bites, it may be on shaky ground after our decision in *Knight, supra,* 3 Cal.4th 296.[4] If the rule is based more appropriately on the defendant's relationship with the veterinarian, and the defendant's conduct in entrusting the animal to the professional care and control of the veterinarian, it may be sound. But like the classic firefighter's rule, it does not provide support for the application of the doctrine of assumption of risk when the defendant is a third party who has not secured the services of the plaintiff or otherwise entered into any relationship with the plaintiff. In fact, the defendant in this case is not in the position of the dog owner who secures the services of a veterinarian. Rather, the defendant is more comparable to a person delivering dog food to a veterinarian's office—presumably such a person would be under a duty of care not to negligently cause the clientele to bite the veterinarian.

In fact, one Court of Appeal opinion has pointed out that the "veterinarian's rule" does not apply when the defendant dog owner has not contracted for the services of the plaintiff. In *Davis* v. *Gaschler* (1992) 11 Cal.App.4th 1392 [14 Cal.Rptr.2d 679], a dog owner sought to avoid liability for a dog bite on the ground that plaintiff was a professional breeder and handler of dogs. But because the plaintiff had encountered the dog not in her capacity

---

[4]We also reject the reasoning of the court in *Holland* v. *Crumb* (1994) 26 Cal.App.4th 1844 [32 Cal.Rptr.2d 366], applying the firefighter's rule to the claim of a privately employed tow truck driver on the theory that a tow truck driver must assume the foreseeable risks of such hazardous employment. It is certainly not the case, as the Court of Appeal suggested in *Holland,* that private employees assume all the foreseeable risks of their employment. As we have explained above, *Knight, supra,* 3 Cal.4th 296, requires a closer analysis, focusing not on the foreseeability of the hazard or the plaintiff's subjective awareness of risk, but on the defendant's duty of care and the relationship of the parties.

as a breeder, but as a Good Samaritan who took over the handling of the injured dog, there was no relationship between the parties that justified exonerating the defendant from the usual standard of care. The court wrote: "the absence of duty is established by the nature of the activity and the relationship of the parties. Thus, [in the case of firefighters and veterinarians] the plaintiff is employed and compensated for work that carries with it certain hazards. Here, plaintiff was not employed or otherwise compensated for helping injured dogs. Nor was there an employment relationship or any relationship between plaintiff and defendants. Defendants cite no cases applying the firefighter's rule or veterinarian's rule where there was no relationship between the plaintiff and defendant . . . ." (*Id.* at p. 1401; see also *Prays* v. *Perryman* (1989) 213 Cal.App.3d 1133 [262 Cal.Rptr. 180] [dog groomer who has not yet decided whether to accept skittish animal for grooming does not assume risk of dog bite].)

The most substantial justifications for the firefighter's rule are those based on the public nature of the service provided by firefighters and the relationship between the public and the public firefighter. Firefighting is essentially a government function, and the public has undertaken the financial burden of providing it without liability to individuals who need it. Because of the relationship between the public, the firefighter, and those who require the services of the firefighter, the individual's usual duty of care towards the firefighter is replaced by the individual's contribution to tax-supported compensation for the firefighter. This relationship is missing between a privately employed safety employee and a third party.

Thus we agree with the court in *Kowalski* v. *Gratopp* (1989) 177 Mich.App. 448 [442 N.W. 2d 682], in which the court refused to apply the firefighter's rule to the employee of a private ambulance service, stating that the rule "is limited by its very nature to public employees. It is the public that hires, trains, and compensates fire fighters and police officers to confront danger. Basic to the public policy rationale underlying the fireman's rule is the spreading to the public of the costs of employing safety officers and of compensating them for any injuries they may sustain in the course of their employment. 'Fire fighters are present upon the premises, not because of any private duty owed the occupant, but because of the duty owed to the public as a whole.' " (*Id.* at p. 683, fn. omitted.) The court went on to explain that "[f]ire fighters and police officers are different than other employees whose occupations may peripherally involve hazards. Safety officers are employed, specially trained, and paid to confront dangerous situations for the protection of society." (*Id.* at p. 684, original italics omitted; see also *Krause* v. *U.S. Truck Co., Inc.* (Mo. 1990) 787 S.W.2d 708, 711, 713 [89 A.L.R.4th 1067] [refusing to extend firefighter's rule to volunteer ambulance attendant]; Annot. (1991) 89 A.L.R.4th 1079.)

If we look closely at defendant's activity and plaintiffs' relationship to it, as *Knight, supra,* 3 Cal.4th 296, instructs, we see that plaintiffs were not present at the scene in order to assure *defendant's safety or to prevent defendant's activity* from causing a fire. Nor is there any clear policy reason to excuse defendant from the usual duty of care, as we are concerned that all persons in a hazardous industrial setting conduct themselves with due care. Not having provided itself with plaintiffs' services nor having in any way paid to exonerate itself from the usual duty of care, defendant has established no policy reason justifying relieving it of a duty of care towards plaintiffs. We conclude that neither the doctrine of assumption of risk nor the firefighter's rule bars the claim of a private safety employee for injuries caused by the negligence of a third party.

A court may grant summary judgment only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. (Code Civ. Proc., § 437c.) It was defendant's burden to establish that no triable issue of facts remained (*Lipson* v. *Superior Court, supra,* 31 Cal.3d at p. 374), and this burden it failed to carry. Accordingly, it was error to grant the motion for summary judgment.

### CONCLUSION

The judgment of the Court of Appeal is reversed and the matter is remanded to the Court of Appeal with directions to reverse the order granting summary judgment.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.