[No. B013470. Second Dist., Div. Two. Mar. 28, 1986.]

GUYLA ROWLAND et al., Plaintiffs and Appellants, v.
SHELL OIL COMPANY et al., Defendants and Respondents.

COUNSEL

Agnew & Brusavich and Jean Corey for Plaintiffs and Appellants.

Meyers, Bianchi & McConnell, James S. Bianchi, Michael Schillaci, Cheryl F. Gertler, Mommaerts & Rutledge, Charles Harris, Hagenbaugh & Murphy, John J. Tary and Paul G. Szumiak for Defendants and Respondents.

OPINION

GATES, J.—Plaintiffs Guyla Rowland, David Rowland, Sarah Rowland, Linda Griggers, Lee Charles Griggers and Nancy Jean Griggers, the widows and minor children of decedents Richard Rowland and Porter Griggers, appeal from a summary judgment in favor of defendants Shell Oil Company, American Transfer Company and Westoil Terminals. They contend: "A. Where the conduct which results in injury is independent from the conduct which necessitated the fireman's presence at the scene, the fireman's rule does not apply. B. Because decedents did not knowingly and voluntarily confront the hazard that caused their deaths, the fireman's rule does not apply. C. Where a fireman's injuries are caused by conduct within the ambit of Civil Code § 1714.9, the fireman's rule does not apply. D. It is a question of fact whether [plaintiffs'] delayed discovery of all facts essential to their cause of action was justifiable and reasonable so as to prevent the running of the statute of limitations."

At approximately 10:30 p.m. on April 6, 1973, decedents Rowland and Griggers, acting within the course and scope of their employment as firemen for the City of Whittier, responded to a chemical spill that had occurred when a tanker truck operated by American Transfer Company jackknifed and overturned in the parking lot of a shopping center. Although this spill initially had been reported as one involving gasoline, it became apparent immediately upon the fire department's arrival at the scene that such was not the case. In fact, the truck was transporting D-DR soil fumigant, a chemical containing dichloropropene. The truck had been loaded by Westoil Terminals and its contents had been manufactured by Shell Oil Company.

In October 1979 Rowland was diagnosed as having diffuse histiocytic lymphoma. He died from a complication of the tumor on October 3, 1980. Griggers also had been found to be suffering from a similar disorder on February 19, 1980, and he died several weeks after Rowland on December 31, 1980.

On April 26, 1982, plaintiffs filed the instant action. The trial court granted defendants' motion for summary judgment on March 12, 1985. It held defendants were entitled to judgment (1) against plaintiffs Linda Griggers and Guyla Rowland, the surviving spouses, for their failure to file their complaint within the period provided for in Code of Civil Procedure section 340, subdivision (3), and (2) against all plaintiffs by reason of the "fireman's rule."

■ Our highest court has "reiterated and confirmed the rationale underlying the fireman's rule, observing that it is based upon . . . the traditional principle that 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby,' [citation] . . . ." (*Hubbard* v. *Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 706, 620 P.2d 156].) Of course, no one, a fireman included, assumes every possible risk that may be encountered while engaged in the performance of his duties, only those which are known or can reasonably be anticipated. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 371 [182 Cal.Rptr. 629, 644 P.2d 822].)

Where a person does no more than cause the peril in which a fireman is injured, it is immaterial whether that person acted negligently or in the course of an ultrahazardous activity. In either event, the assumption of risk principle underlying the fireman's rule applies. (*Lipson* v. *Superior Court, supra,* at p. 376.) ■ On the other hand, the rule is not intended to bar recovery for independent acts of misconduct which were not the occasion for the fireman's presence. (*Lipson* v. *Superior Court, supra,* at p. 369.)

Thus, a defendant will not be shielded from liability if (1) he fails to warn firemen of a known, but hidden danger that exists on his premises separate and apart from that to which they responded (*Bartholomew* v. *Klingler Co.* (1975) 53 Cal.App.3d 975, 979 [126 Cal.Rptr. 191]; *Terhell* v. *American Commonwealth Associates* (1985) 172 Cal.App.3d 434, 440-441 [218 Cal.Rptr. 256]), or (2) affirmatively misrepresents the nature of a hazard (*Lipson* v. *Superior Court, supra,* at p. 370) and such falsification causes their injuries.

In an attempt to bring the present action within the scope of these limitations, plaintiffs urge that "[t]he only reason the Fire Department was summoned and arrived at the scene was because a truck driver failed to properly handle his vehicle and tipped it over." This, they argue, was independent from defendants' "development and production of the chemical, their failure to warn of its hazardous nature, and their maintenance of an ultrahazardous activity . . . ."[1] Additionally, they claim that the principle of assumption of risk is not applicable since they were misled as to the nature of the danger to be confronted and "[i]n reliance on all of these failures to warn, . . . did not take the necessary precautions to protect themselves from contact with the toxic chemical and as a result, suffered severe injuries."

█ Initially we note, as do defendants, that plaintiffs thus seek narrowly and artificially to isolate the occurrence which necessitated the presence of the Whittier Fire Department at the scene of the subject accident. In truth, the decedents were not summoned because a driver had negligently operated his vehicle but because that negligence had resulted in the spill of a substance whose hazardous potential was not known.

Treating with chemical spills is traditionally within the scope of a fireman's ordinary duties, and plaintiffs so concede. By their very nature such operations necessarily create the risk of injury, even death, from explosion, fire, contact with hazardous substances and inhalation of toxic vapors. Of course, the precise nature of the danger present on any given occasion may not be readily apparent but so long as it is of the type ordinarily associated with the handling of potentially dangerous chemicals, the fireman's rule will apply.

When the facts of our present case are considered in light of these principles, it is clear that decedents knew or should have known that exposure

---

[1]Plaintiffs assert the "truck was not placaded with any warning signs," the "shipping documents contained no warnings" and the "driver was not present at the scene when Fire Department personnel first arrived, and when he was located, he did not know that the chemical was toxic or hazardous."

to D-DR, a substance unfamiliar to them, *might* prove deleterious to their health. That is, (1) the tanker itself carried no placards identifying the properties of the chemical, (2) the bill of lading listed it only as "D-DR soil fumigant," and further described it as "liquid agricultural insecticide, NOIBN, D-D soil fumigant," and (3) the driver had little information about the product and so advised decedents. ■ Tragically, however, at the time of this incident it was the practice of the Whittier Fire Department to *simply assume* chemicals were nonhazardous in the absence of a warning label, despite the lack of logic to support such a supposition and the self-evident fact that it might prove incorrect. Consequently, although breathing apparatus were available at the scene and rubber boots could have been brought from their station, decedents made no effort to avoid contact with, or inhalation of, the chemical. Precautionary measures were limited to the fire captain's order to evacuate homes in the spill area in the event D-DR chanced to be flammable. Such deliberate failure of care, however, is not chargeable to defendants.

Insofar as certain fire department personnel may have been informed initially through a police dispatcher that D-DR was relatively harmless, there is no indication this information came from any of the defendants. On the contrary, when Shell representatives were finally contacted at the conclusion of the mopup operation, they "recommended that all clothing and equipment, worn or used, be removed; for [the firemen] to shower very, very well; and to bag all of [their] clothing in plastic bags and destroy it." Those firemen suffering from headache, tightness in the neck, nausea or dizziness were told to report to the hospital for respiratory therapy.

■ Under the circumstances, it cannot be said that decedents were injured as a result of risks beyond those inevitably involved in handling unknown chemicals or that decedents' failure to take appropriate precautions for their own safety was due to any independent acts of misconduct on defendants' part. Rather, the record demonstrates that in the discharge of their official duties decedents incurred, and were injured as a result of, the very risk which occasioned their presence at the accident scene. Therefore, the fireman's rule is squarely applicable.

■ Furthermore, even were we to assume that Civil Code section 1714.9[2] effective January 1, 1983, is merely "remedial in nature and in-

---

[2]Civil Code section 1714.9 provides in relevant part: "(a) Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in

tended by the Legislature to be applied at the earliest possible time, including application to all cases not then finally decided" (*City of Redlands* v. *Sorensen* (1985) 176 Cal.App.3d 202, 212 [221 Cal.Rptr. 728]), the result would not be different since the occurrence here presented is not covered by its provisions. As we have previously observed, no basis exists for concluding that defendants, through the acts of the driver of the truck or any other of their agents, engaged in any tortious conduct after decedents' presence at the scene was known or should have been known.

■  In addition, although Vehicle Code section 27903 requires vehicles transporting substances classified by the Department of Transportation as hazardous materials to display such placards or markings as are prescribed by the regulations of that agency (see 18 U.S.C. § 831 et seq., repealed Nov. 30, 1979; 49 U.S.C. § 1801 et seq., eff. Jan. 3, 1975; 49 C.F.R. § 171 et seq.), dichloropropene was not included in the commodity list of hazardous materials in effect on April 6, 1973. (49 C.F.R. § 172.5, revised as of Oct. 1, 1972.) Nor does our present record establish it would otherwise have been considered a dangerous article subject to the department's regulations. (49 C.F.R. § 172.2, revised as of Oct. 1, 1972.)

While dichloropropene is currently listed in the department's hazardous materials table (49 C.F.R. § 172.101), it is designated only as a "flammable liquid." Obviously, defendants' failure to provide a placard to that effect could not have been the proximate cause of decedents' injuries. Moreover, the purpose of these regulations is "[t]o promote the uniform enforcement of law and to minimize the dangers to life and property incident to the transportation of hazardous materials" (49 C.F.R. § 177.800)[3] rather than ". . . to protect the peace officer, firefighter or emergency medical personnel." (Civ. Code, § 1714.9, subd. (2).)

---

any of the following situations:

"(1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel.

"(2) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer, firefighter, or emergency medical personnel, violates a statute, ordinance, or regulation, and was the proximate cause of an injury which the statute, ordinance, or regulation was designed to prevent, and the statute, ordinance, or regulation was designed to protect the peace officer, firefighter, or emergency medical personnel.

"As used in this subdivision, a statute, ordinance, or regulation prohibiting resistance or requiring a person to comply with an order of a peace officer or firefighter is designed to protect the peace officer, firefighter, or emergency medical personnel."

[3]49 United States Code section 1801 similarly specifies: "It is declared to be the policy of Congress in this chapter to improve the regulatory and enforcement authority of the Secretary of Transportation *to protect the Nation* adequately against the risks to life and property which are inherent in the transportation of hazardous materials in commerce." (Italics added.)

Because we have concluded that all plaintiffs are precluded from proceeding by virtue of the fireman's rule, we need not determine whether the decedents' surviving spouses were additionally barred by the statute of limitations.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

A petition for a rehearing was denied April 23, 1986, and appellants' petition for review by the Supreme Court was denied July 24, 1986. Bird, C. J., and Grodin, J., were of the opinion that the petition should be granted.