82 Cal.Rptr.2d 497 (1999)
70 Cal.App.4th 79
William TILLEY, Plaintiff and Appellant,
v.
Jerome L. SCHULTE, Defendant and Respondent.
No. B114453.
Court of Appeal, Second District, Division Six.
February 22, 1999.
Rehearing Denied March 24, 1999.
Review Denied May 19, 1999.[*]
*498 Eric J. Parkinson, San Luis Obispo, for Plaintiff and Appellant.
Monroy, Weiss, Averbuck & Gyser, Jon F. Monroy; Thelen, Reid & Priest, Glenn Cornell, Curtis A. Cole and Teri L. Vasquez, Los Angeles, for Defendant and Respondent.
GILBERT, Acting P.J.
While responding to a call of shots being fired, a police officer is shot by a man who receives psychiatric care. The police officer sues the man's psychiatrist for negligent care, among other things. Because the risk of being shot while on duty in response to such a call is one the officer assumes under the "firefighter's rule," the psychiatrist may not be held liable to the officer here.
William Tilley appeals from the judgment of the trial court after it granted summary adjudication of issues in favor of respondent, Doctor Jerome L. Schulte. We affirm.

FACTS
In June 1994, Barry Mora (Mora) was shooting his pistol at his home in the City of Atascadero. Someone reported "shots being fired" to the Atascadero Police Department. Officer Tilley was on duty and responded to the call. Officer Tilley thought he heard fireworks coming from the direction of Mora's home. Officer Tilley drove up Mora's driveway to talk with him about the reported shots. Officer Tilley and Mora had had previous friendly encounters.
Tilley began to get out of his car to ask Mora if he had any information regarding shots being fired. Tilley did not notice that Mora held a shotgun by his right side. Mora shot Tilley numerous times with the shotgun, severely injuring him.
Mora had been in psychiatric treatment for his feelings of hostility since early January 1994. Doctor Daniel Gordon, the initial evaluating psychiatrist, provided Mora with a note stating that Mora is homicidal. Mora gave the note to Doctor Schulte, arid he told Doctor Schulte that he had homicidal feelings *499 towards his supervisor at the California Youth Authority.
Doctor Schulte determined that Mora suffered from major depression and anxiety, among other things. Doctor Schulte recognized that Mora felt rage and revenge towards his supervisor, but he failed to obtain any medical history about Mora other than about his allergies and that he had an emergency psychiatric consultation with Doctor Gordon. Doctor Schulte did not contact either Doctor Gordon or Mora's primary care physician, Doctor Scott Greaves.
Doctor Schulte did not ask Mora if he owned a gun or whether he had any means to carry out his homicidal feelings towards the supervisor. Doctor Schulte did not warn Mora's supervisor about Mora's threats, nor did he notify any law enforcement agency about the threats.
Tilley sued Doctor Schulte for negligent treatment of Mora, among other things. Doctor Schulte filed motions for summary adjudication and summary judgment. Doctor Schulte argued that the firefighter's rule barred Tilley's action and that he had no duty to warn Tilley pursuant to Tarasoff v. Regents of University of California (1976) 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 or Civil Code section 43.92.[1]
The trial court granted the motion for summary adjudication as to Doctor Schulte due to the firefighter's rule. The court denied the motion for summary judgment as to all other causes. The trial court denied Tilley's motions for reconsideration, dismissed the remaining causes pled against Doctor Schulte and entered final judgment as to Doctor Schulte. This appeal ensued from the judgment.

DISCUSSION
"The applicable standard of review of a grant of summary adjudication of issues is the de novo standard." (Ojavan Investors, Inc. v. California Coastal Com. (1997) 54 Cal.App.4th 373, 385, 62 Cal.Rptr.2d 803.) This is the same standard applicable to summary judgments. (See Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 673-674, 25 Cal.Rptr.2d 137, 863 P.2d 207.)
"We all have the duty to use due care to avoid injuring others." (Neighbarger v. Irwin Industries, Inc. (1994) 8 Cal.4th 532, 536, 34 Cal.Rptr.2d 630, 882 P.2d 347; Knight v. Jewett (1992) 3 Cal.4th 296, 315, 11 Cal.Rptr.2d 2, 834 P.2d 696.) "The duty ... normally extends to those engaged in hazardous work." (Neighbarger, supra, at p. 536, 34 Cal.Rptr.2d 630, 882 P.2d 347.) Our Supreme Court states that "[w]e have never held that the doctrine of assumption of risk relieves all persons of a duty of care to workers engaged in a hazardous occupation. Nonetheless, a special rule has emerged limiting the duty of care the public owes to firefighters and police officers." (Id., at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.)
As a matter of public policy and fairness, when firefighters and police officers are injured by the very hazard they have been employed to confront, they are generally precluded from recovering in tort damages from private persons. (Calatayud v. State of California (1998) 18 Cal.4th 1057, 1061-1062, 77 Cal.Rptr.2d 202, 959 P.2d 360; Neighbarger v. Irwin Industries, Inc., supra, 8 Cal.4th at pp. 539-540, 34 Cal.Rptr.2d 630, 882 P.2d 347.) The firefighter's rule is based on the public policy that officers injured in the line of duty should be compensated through the public fisc rather than by individual tort recoveries. (Calatayud, supra, at p. 1062, 77 Cal.Rptr.2d 202, 959 P.2d 360.) Public safety personnel receive special compensation and dispensations for confronting dangers inherent in their positions. (Id., at pp. 1061-1062, 77 Cal.Rptr.2d 202, 959 P.2d 360.)
The firefighter's rule precludes recovery for injuries suffered as a direct consequence of responding to calls in the line of duty. (Calatayud v. State of California, supra, 18 Cal.4th at p. 1061, 77 Cal.Rptr.2d 202, 959 P.2d 360.) Even the member of the public whose conduct precipitates the intervention of a police officer does not owe a police officer a duty of care regarding the acts causing the officer's intervention. (Neighbarger v. Irwin Industries, Inc., supra, *500 8 Cal.4th at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.) The law recognizes that it is too burdensome to charge all who willfully or carelessly cause or fail to prevent the hazards encountered by police and firefighters which cause injuries. (Id., at p. 540, 34 Cal.Rptr.2d 630, 882 P.2d 347; Hubbard v. Boelt (1980) 28 Cal.3d 480, 485, 169 Cal.Rptr. 706, 620 P.2d 156; Seibert Security Services, Inc. v. Superior Court (1993) 18 Cal.App.4th 394, 406, 22 Cal.Rptr.2d 514.)
The firefighter's rule applies only to the conduct which necessitated the summoning of the police officer; it does not apply to independent acts of misconduct committed after the officer arrives at the scene. Officer Tilley argues that the firefighter's rule does not apply here because the injuries he suffered were not specifically and immediately caused by Mora. (Calatayud v. State of California, supra, 18 Cal.4th at p. 1063, 77 Cal.Rptr.2d 202, 959 P.2d 360; Neighbarger v. Irwin Industries, Inc., supra, 8 Cal.4th at p. 538, 34 Cal.Rptr.2d 630, 882 P.2d 347.) Officer Tilley opines that he may recover from Doctor Schulte because he suffered injury due to Mora's "separate and independent acts" occurring after Officer Tilley heard a "vague" call about shots being fired and began investigating. Officer Tilley argues that Doctor Schulte may not invoke the firefighter's rule because Doctor Schulte failed to warn him that Mora was extremely dangerous.
Officer Tilley construes the firefighter's rule too narrowly. Officer Tilley responded as a police officer in the line of duty to a call regarding "shots being fired" in the area. He arrived in the area to investigate the call. That Officer Tilley did not know precisely where the initial shots had been fired or whether Mora was a suspect does not preclude application of the firefighter's rule. That he thought that the reported sound may have been due to fireworks is of little consequence, too.
Officer Tilley thought the sound came from Mora's property, and he went to Mora's residence in response to the call. Officer Tilley was injured immediately after he began to approach Mora. Mora's acts are the specific, direct and immediate cause of the injuries suffered by Officer Tilley. Officer Tilley was injured confronting the very risk for which he was employed and specially compensated. (See generally Lenthall v. Maxwell (1982) 138 Cal.App.3d 716, 717-719, 188 Cal.Rptr. 260.)
The instant case is unlike Donohue v. San Francisco Housing Authority (1993) 16 Cal. App.4th 658, 20 Cal.Rptr.2d 148, where a firefighter slipped and fell on wet, slippery stairs while conducting an unannounced fire safety inspection at a building. The firefighter visited the premises to check for fire hazards, not to inspect the nonslip quality of adhesive treads to stairs. Because the injuries suffered by the firefighter in Donohue were not caused by an act of negligence which brought him to the building, the firefighter's rule did not apply. (Id., at p. 663, 20 Cal.Rptr.2d 148.) In contrast, Officer Tilley arrived on the scene specifically in response to the call of shots being fired and he was shot during his investigation of that call.
Officer Tilley contends that section 1714.9, subdivision (a), should apply here to Doctor Schulte's conduct. We disagree. Section 1714.9 states, in pertinent part, "Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, ... but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person, in any of the following situations: [¶] (1) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer.... [¶] (2) Where the conduct causing the injury occurs after the person knows or should have known of the presence of the peace officer,... violates a statute, ordinance, or regulation, and was the proximate cause of the injury which the statute ... was designed to prevent, and the statute ... was designed to protect the peace officer.... [¶] ... [¶] (3) Where the conduct causing the injury was intended to injure the peace officer...."
"[S]ection 1714.9, subdivision (a)(3) imposes liability when the misconduct is `intended to injure' the public safety member." *501 (Calatayud v. State of California, supra, 18 Cal.4th at p. 1068, 77 Cal.Rptr.2d 202, 959 P.2d 360.) Section 1714.9 also applies to the willful acts of one injuring the officer or to reckless or negligent acts of such person after the perpetrator knew or should have known of the peace officer's presence. (Id., at pp. 1065-1067, 77 Cal.Rptr.2d 202, 959 P.2d 360.) Here Mora intentionally shot Officer Tilley after he knew or should have known that Officer Tilley was the person seeking information from him, but we reject Officer Tilley's argument that Doctor Schulte is vicariously liable for Mora's conduct.
Section 1714.9 does not apply to the alleged prior negligence of Doctor Schulte in improperly medicating Mora or in failing to report Mora's threats about his supervisor to law enforcement personnel. The nexus between the medication regime Doctor Schulte prescribed for Mora and the shooting of Officer Tilley is too attenuated to ascribe liability to Doctor Schulte for Mora's acts even under a broad view of section 1714.9. Although Doctor Schulte knew or should have known that Mora harbored homicidal feelings towards his work supervisor, Mora never discussed Officer Tilley with Doctor Schulte. Under section 1714.9, Mora may be liable for shooting Officer Tilley after he got out of his vehicle, but Doctor Schulte may not be viewed as the proximate cause of Officer Tilley's injuries. (See generally Mitchell v. Gonzales (1991) 54 Cal.3d 1041, 1 Cal.Rptr.2d 913, 819 P.2d 872.)
Section 43.92 codifies the rule in Tarasoff v. Regents of University of California, supra, 17 Cal.3d at pp. 431, 438, 131 Cal. Rptr. 14, 551 P.2d 334, requiring psychotherapists to warn potential victims of violence. Section 43.92 states that if "the patient has communicated to the psychotherapist a serious threat of physical violence against a reasonably identifiable victim or victims," then he has the duty to make "reasonable efforts to communicate the threat to the victim or victims and to a law enforcement agency."
Officer Tilley argues that Doctor Schulte had the duty to warn the Atascadero Police Department of Mora's threat about the work supervisor, and that if he had done so, it would have been highly unlikely that Mora would have shot Officer Tilley. No one disputes that Mora harbored homicidal feelings towards his work supervisor. Under section 43.92, Doctor Schulte is required to notify both the work supervisor and law enforcement about the threat to Mora's supervisor.
But the issue here is whether Doctor Schulte knew or should have known that Mora was homicidal towards Officer Tilley or whether Mora expressed generalized homicidal ideations which one could reasonably identify as including Officer Tilley. Mora told Doctor Schulte only of his homicidal feelings towards his supervisor. Mora never told Doctor Schulte that he harbored generalized homicidal feelings, much less that he desired to harm or kill Officer Tilley. To the contrary, the record shows that Mora had been friendly towards Officer Tilley in the past.
One who negligently or intentionally misrepresents the nature of a hazard to public safety officers may be held liable in damages for injuries sustained as a result of such misrepresentation. (Neighbarger v. Irwin Industries, Inc., supra, 8 Cal.4th at p. 541, 34 Cal.Rptr.2d 630, 882 P.2d 347.) Here Officer Tilley may not rely on Doctor Schulte's failure to notify Mora's supervisor and the police department of Mora's threat to his work supervisor for misrepresentation of the hazard to Officer Tilley. Officer Tilley does not establish that section 43.92 abrogates the firefighter's rule.
The judgment is affirmed. Costs are awarded to respondent.
YEGAN, J., and STONE, J.[*], concur.
NOTES
[*] Mosk, J., dissented.
[1] All undesignated statutory references are to the Civil Code.
[*] Retired Presiding Justice, Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.