[No. A085012. First Dist., Div. Five. July 21, 1999.]

MELANIE STAPPER, Plaintiff and Appellant, v.
GMI HOLDINGS, INC., Defendant and Respondent.

### COUNSEL

Greene, Broillet, Taylor, Wheeler & Panish, Scott H. Carr, Browne Greene; Esner & Chang, Stuart B. Esner, Andrew N. Chang; and Terrence L. Butler for Plaintiff and Appellant.

Robinson, Calcagnie & Robinson and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, John R. Reese, Warren George and John S. Hoar for Defendant and Respondent.

### OPINION

**JONES, P. J.**—Melanie Stapper brings this appeal from the trial court's grant of nonsuit on her claims against GMI Holdings, Inc., doing business as the Genie Company (Genie). The trial court concluded that "the Firefighter's Rule bars plaintiff's claims as a matter of law." We reverse.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At the trial court's request and prior to selection of a jury, Stapper made an offer of proof as to the evidence that she would present to "overcome the

firefighter's rule." Stapper offered to prove facts in pertinent part as follows: On March 8, 1995, Melanie Stapper and two other firefighters from unit 26 responded to the report of a fire at the home of Toby and Yvonne Lee. Upon arriving at the scene of the fire, Stapper and her colleagues entered the home's garage through an open garage door. At that point in time, the garage did not contain any smoke or flames. The firefighters extended a two-inch diameter firehose into the garage through the open garage door and "charged the line." When charged, the line becomes "rock solid with 120 P.S.I."

The firefighters opened a door in the garage that led to the house and determined that the house contained smoke and possibly flames. Through this door, the firefighters "played water inside the house, in the ceiling, in order to break what they anticipated might be a wall, or a smoke, or a gas area inside the house and also to cool it off. They played the water in for approximately a minute to two minutes . . . . Heat increased, but . . . no flame came into the garage, [but] the smoke did come [into the garage] in a small degree." Eventually, heat and smoke forced Stapper and another firefighter to retreat to the garage door only to discover that it had come down and would not open. Stapper alleged that Mr. or Mrs. Lee had closed the door using a remote control device. The garage door could not be moved because "the garage door Genie device, in its installation, had a worm screw device that basically affixed down the door in a permanent condition." Other firefighters, who were outside the garage, opened the garage door but by then one firefighter had sustained fatal injuries and another firefighter, Stapper, had sustained injuries resulting in brain damage and blindness.

In her offer of proof, Stapper contended that the garage door opener was defectively designed. Stapper anticipated showing that "the limit switch is so located in its rail at the top of the garage, that with the kind of doors that we have in California this limit switch can be contacted in such a way that it will lock, although it's not intended to on anything above one and one-half inches, and here we had a hose of two inches or above." In other words, Stapper alleged that, contrary to its intended design, the garage door did not automatically reopen when it came in contact with the hose.

Stapper also argued that Genie had abandoned its initial defense that "the heat brought the door down and/or the heat kept the door from going up." However, Stapper additionally argued that even if Genie had not abandoned this defense, the facts would not support it. When the door came down, the garage did not contain flames, was not hot, and had only "a bit of smoke" in it. Lastly, Stapper stated that on one other occasion a person had died when the Genie garage door opener failed to operate during a fire.

The trial court granted nonsuit on Stapper's claims against Genie "because the risk of a malfunctioning garage door opener or anything else is reasonably associated with a fire."

## II. Discussion

 Stapper contends that the trial court erred in finding that her claims were barred by the firefighter's rule. Because the trial court granted nonsuit, our review must resolve all conflicts in the evidence and draw all reasonable inferences in favor of Stapper. (See *Bierbower* v. *FHP, Inc.* (1999) 70 Cal.App.4th 1, 6 [82 Cal.Rptr.2d 393].)

 "The undergirding legal principle of the [firefighter's] rule is assumption of the risk . . . ." (*Calatayud* v. *State of California* (1998) 18 Cal.4th 1057, 1061 [77 Cal.Rptr.2d 202, 959 P.2d 360] (*Calatayud*).) In *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696], our Supreme Court adopted the phraseology "primary" assumption of the risk in order to differentiate true assumption of the risk from so-called "secondary" assumption of the risk, which no longer exists as a separate legal construct, having been merged into the comparative fault scheme. (*Id.* at pp. 308, 314-315.) Our use of the phrase "assumption of the risk" will refer exclusively to the notion of "primary" assumption of the risk.

When assumption of the risk applies, it operates to exonerate a defendant from the duty of care that would have otherwise been owed to the plaintiff. (*Neighbarger* v. *Irwin Industries, Inc.* (1994) 8 Cal.4th 532, 536 [34 Cal.Rptr.2d 630, 882 P.2d 347] (*Neighbarger*).) The sole issue presented by this appeal is whether the firefighter's rule, which is an example of the proper application of the doctrine of assumption of the risk (*id.* at p. 538), operates to bar liability by waiving any otherwise applicable duty of care owed by Genie to Stapper. We conclude that Stapper's claims against Genie are not barred by the firefighter's rule.

 We are guided in part by our Supreme Court's narrow description of the firefighter's rule. "The firefighter's rule . . . is hedged about with exceptions. The firefighter does not assume every risk of his or her occupation. [Citation.] The rule does not apply to conduct other than that which necessitated the summoning of the firefighter or police officer, and it does not apply to independent acts of misconduct that are committed after the firefighter or police officer has arrived on the scene. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at p. 538.) If we follow this general description of the firefighter's rule, Stapper's suit may proceed because she alleges that the garage door's malfunction was *independent* of the fire, and not caused by the fire.

 We do not rest our conclusion solely on this language, however. "Any exception to the general rule [of duty] must be based on statute or

clear public policy. [Citation.]" (*Neighbarger, supra,* 8 Cal.4th at p. 537.)
In the case of individuals who negligently start a fire, public policy considerations have resulted in a waiver of the usual duty of care.[1] (*Id.* at pp. 537-539.) We look to those policy considerations to determine whether in this case Genie should be exonerated from its usual duty of care. (See, e.g., *id.* at p. 539 [analyzing policy basis for firefighter's rule to determine whether it should apply when the safety employees are privately rather than publicly employed].)

One policy basis for the firefighter's rule is fairness. Our Supreme Court has explained that it is "unfair to permit a firefighter to sue for injuries caused by the negligence that made his or her employment necessary. [Citations.]" (*Neighbarger, supra,* 8 Cal.4th at pp. 541-542.) " ' "[I]t is the fireman's business to deal with that very hazard [the fire] and hence, . . . he cannot complain of negligence in the creation of the very occasion for his engagement." ' [Citations.]" (*Calatayud, supra,* 18 Cal.4th at p. 1062.)

No similar consideration of fairness arises in this situation. Stapper does not complain of negligence in the creation of the fire, but rather seeks damages for acts that allegedly occurred independent of the fire. Genie's alleged negligence did not make Stapper's employment necessary nor was it the occasion for her presence at the Lee's home.

Our Supreme Court has also supported the firefighter's rule by explaining that the public has in essence insured itself from individual tort liability by providing tax-supported compensation. (*Calatayud, supra,* 18 Cal.4th at p. 1062.) " 'This spreads the costs of injuries to public officers among the whole community, making the public in essence a self-insurer against those wrongs that any of its members may commit.' [Citations.] '. . . In effect, the public has purchased exoneration from the duty of care and should not have to pay twice, through taxation and through individual liability, for that service. [Citations.]' [Citations.] Accordingly, the rule functions as a cost-spreading mechanism 'allow[ing] the public to insure against the injuries that its officers will inevitably sustain in the performance of their duties.' [Citations.]" (*Ibid.*)

Finding that Genie is exonerated from any duty of care that it might owe Stapper does not further this policy consideration for two reasons. First,

---

[1]Stapper does not contend that this case comes within a statutory abrogation of this limitation on liability. (See Civ. Code § 1714.9, subd. (a).) We therefore solely consider "the *common law* doctrine known as the firefighter's rule." (*Calatayud, supra,* 18 Cal.4th at p. 1059, italics added.)

it cannot be said that injuries caused at least in part by independent acts of negligence are " 'inevitabl[e] . . . in the performance of [a firefighter's] duties.' " (See *Calatayud, supra,* 18 Cal.4th at p. 1062.) Second, while it may be reasonable for the public to insure itself from tort suits alleging negligence by its members in the creation of a fire, it is not reasonable for the public to insure a product manufacturer, even though the manufacturer may also be a corporate member of that taxpaying public, from a damage suit when its product malfunctions during, but not because of, a fire. The mere chance that a product defect reveals itself during a fire should not shift the costs of damages, which the manufacturer would have otherwise borne, from the manufacturer to the public.

For similar reasons, the liberal compensation afforded injured firefighters, another policy basis for the firefighter's rule (*Calatayud, supra,* 18 Cal.4th at p. 1062), does not support waiver of Genie's duty of care. The firefighter's enhanced compensation comes at the expense of the public in general. (*Ibid.*) As we have previously stated, policy considerations do not justify having the public serve as a partial insurer of a product manufacturer.

The Supreme Court has also recognized that a quick response to the fire without question as to the fire's cause serves the public good. (*Neighbarger, supra,* 8 Cal.4th at p. 544.) Absent the firefighter's rule, individuals who fear liability may hesitate to call for assistance in fighting a fire. (Cf. *Seibert Security Services, Inc.* v. *Superior Court* (1993) 18 Cal.App.4th 394, 414 [22 Cal.Rptr.2d 514].) In this case, the alleged act of negligence was not only independent of the fire, but the alleged tortfeasor was not a person likely to summon the firefighters, such as a resident of, visitor to or neighbor of the property on fire. Thus, recognizing a duty in this instance will not deter the public from summoning the fire department for assistance.

Lastly, the firefighter's rule has also developed because it prevents lengthy trials concerning complex determinations of causation. (*Calatayud, supra,* 18 Cal.4th at pp. 1062-1063.) While the liability issues in this case will not focus on the cause of the fire, they may focus on the effect of the fire: Did the garage door fail to open when it came in contact with the firehose as a result of the fire or as a result of independent acts of negligence? Despite this possibly complex question of fact, this single policy consideration is inadequate in our view to justify excusing Genie from its normal duty of care.[2]

Genie argues that the firefighter's rule applies in this case so long as the risk of a blocked exit is known or reasonably anticipated by firefighters.

---

[2]In her offer of proof, Stapper argued only that the garage door failed to go up after contacting the fire hose due to a design defect that manifested itself coincident with, but not because of, the fire. If, on remand, Stapper's theory changes, and she contends that the fire

While foreseeability was at one time a relevant consideration, it no longer factors into the assumption-of-the-risk analysis. Since the Supreme Court's decision in *Knight* v. *Jewett, supra,* 3 Cal.4th 296, we "focus . . . not on the foreseeability of the hazard or the plaintiff's subjective awareness of risk, but on the defendant's duty of care and the relationship of the parties." (*Neighbarger, supra,* 8 Cal.4th at p. 545, fn. 4.)

Genie supports its foreseeability argument by citing *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609] (*Walters*), and its language stating that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby." (*Id.* at p. 204.) However, our Supreme Court has expressly repudiated this facet of the *Walters* analysis: "[T]he [firefighter's] rule cannot properly be said to rest on the plaintiff firefighter's voluntary acceptance of a known risk of injury in the course of employment, and we disregard that element of the justification for the rule offered in *Walters, supra,* 20 Cal.3d 199, and other cases." (*Neighbarger, supra,* 8 Cal.4th at p. 541.) To the extent language in *Tilley* v. *Schulte* (1999) 70 Cal.App.4th 79 [82 Cal.Rptr.2d 497], upon which Genie relies, can be interpreted as endorsing the foreseeability test, we are compelled to reject it. Following the Supreme Court's decision in *Knight,* foreseeability is a proper consideration in the analysis of comparative fault, but not primary assumption of the risk. (*Neighbarger, supra,* 8 Cal.4th at p. 539.)

Genie similarly argues that the risk of a blocked exit was an "inherent risk." Genie misunderstands the use of that phrase in the context of assumption of the risk. "Inherent risk" does not refer to the type of injury that the plaintiff sustains or the manner in which the injury occurred, but rather the reason for the injury. For example, in *Galardi* v. *Seahorse Riding Club* (1993) 16 Cal.App.4th 817 [20 Cal.Rptr.2d 270] (*Galardi*), the plaintiff, who was injured while horseback riding, brought suit against her trainer, alleging that the trainer "had 'negligently instructed, supervised and controlled plaintiff's activities, including but not limited to, causing plaintiff to jump over fences that were unreasonably and unnecessarily high for the circumstances; said fences being improperly designed, located and spaced, and further advising and counseling plaintiff to jump said improperly designed and placed fences in an improper direction.'" (*Id.* at p. 819.) The Court of Appeal concluded that the plaintiff had not assumed the risk in that case. "Clearly, the sport of horse jumping has the inherent risk that both horse and

caused the garage door to malfunction, the policy analysis set forth above would not govern that fact situation. We do not speculate as to the result under that fact situation because those facts are not before us. For similar reasons, we do not find it necessary to evaluate Stapper's very narrow construction of the firefighter's rule, which would allow liability for damages resulting from any "injury producing risks" other than the one that caused the firefighter to be summoned.

rider will fall and suffer injury. The basic competitive character of the sport involves engaging increasingly higher jumps and at shorter intervals until at some point the competitors can no longer clear the obstacles without substantial contact. Collisions with the jumps and ensuing falls are thus an integral part of the sport. Riders may also fall from the horse as the result of other conditions such as a balking or stumbling mount. Such risks were clearly among those which plaintiff . . . knowingly encountered during her training, when the jumps were raised, intervals became more hazardous, and directions were reversed." (*Id.* at p. 822.) Nevertheless, the *Galardi* decision concluded that ". . . defendants certainly had a duty to avoid an unreasonable risk of injury to plaintiff and to take care that the jumping array was not beyond the capability of horse and rider." (*Id.* at p. 823; see also *Tan* v. *Goddard* (1993) 13 Cal.App.4th 1528, 1535 [17 Cal.Rptr.2d 89] [suit allowed against defendant who knew a horse was "off" due to an injury but nevertheless assigned that horse to plaintiff to jog on a rocky track].) By alleging that defendants had increased the otherwise existing risk of falling, plaintiff's claims were not barred by the doctrine of assumption of the risk.

Genie also contends that *Bay Area Rapid Transit* v. *Superior Court* (1980) 113 Cal.App.3d 1018 [170 Cal.Rptr. 390] (*BART*) supports the trial court's decision. In *BART*, "[i]t [was] alleged that as a result of the negligence and wanton and reckless misconduct of BART in causing [a] fire, one fireman died and the other firemen sustained injuries." (*Id.* at p. 1020.) "BART demurred to the complaints on the ground that the fireman's rule was a bar to all of the causes of action." (*Ibid.*, fn. omitted.) The Court of Appeal concluded that "[a]llegations that the injuries might have been averted or lessened had ventilation systems, communication systems, or rescue apparatus functioned properly, do not take the case out of the fireman's rule." (*Id.* at p. 1022.)

Genie argues that Stapper's allegations are similar to the plaintiffs' allegations in *BART* because Stapper alleges that her injuries might have been averted or lessened had the Genie operator functioned properly. However, Stapper contends that the Genie operator did not malfunction as a result of the fire, but simply coincident with the fire. The *BART* decision provides no guidance in such a fact situation because, as our Supreme Court has explained, the *BART* case did not involve allegations "that the . . . defective conditions [alleged by the plaintiffs] resulted from an independent tortious act which occurred after the firefighters arrived at the scene." (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 369, fn. 4 [182 Cal.Rptr. 629, 644 P.2d 822].)

We do not find *Rowland* v. *Shell Oil Co.* (1986) 179 Cal.App.3d 399 [224 Cal.Rptr. 547] (*Rowland*) to be on point either. In *Rowland,* firefighters who

were exposed to a chemical containing dichloropropene, later developed fatal lymphomas. (*Id.* at pp. 402-403.) The *Rowland* court endorsed an exception to the firefighter's rule for independent acts of misconduct but found that on the facts of that case it could not be said "that decedents' failure to take appropriate precautions for their own safety was due to any independent acts of misconduct on defendants' part." (*Id.* at p. 405.)

Lastly, Genie cites numerous decisions interpreting the scope of the firefighter's rule as it exists under the law of other states, but none of those decisions considered whether the firefighter's rule applies to tortious acts that occur *independent* of the fire. In *Flowers* v. *Rock Creek Terrace* (1987) 308 Md. 432 [520 A.2d 361], the allegations reflected "the theory that Westinghouse and Rock Creek owed a duty to [the plaintiff] to maintain a reasonably fireproofed elevator system and to warn of potential malfunctions of the elevators in the event of a fire." (*Id.* at p. 370.) The decision in *Jackson* v. *Velveray Corp.* (1964) 82 N.J.Super. 469 [198 A.2d 115], merely concludes that the "rule of nonliability extends not only to negligence in creating or starting the fire but also includes negligence related to the spread of the fire, such as ordinary negligence in housekeeping which tends to promote the spread of a fire after its inception from other causes." (*Id.* at p. 118.) *Kreski* v. *Modern Wholesale Elec. Supply* (1987) 429 Mich. 347 [415 N.W.2d 178], similarly involved allegations of negligence "in maintaining the building." (*Id.* at p. 180.) The central question in *Buren* v. *Midwest Industries, Inc.* (Ky. 1964) 380 S.W.2d 96 was "whether failure of the owners of a building to comply with applicable fire safety ordinances (for example, ordinances requiring sprinkler systems, fire walls and stops, etc.) results in liability for the deaths of firemen killed while fighting a fire." (*Id.* at p. 97.) Lastly, the injuries at issue in *Chesapeake and Ohio Railway Company* v. *Crouch* (1968) 208 Va. 602 [159 S.E.2d 650], occurred when wind caused a forest fire to "mushroom up or explode" (*id.* at p. 655) and in *White* v. *Edmond* (11th Cir. 1992) 971 F.2d 681, when a fire caused shock absorbers on an automobile to burst (*id.* at pp. 682-683). Unlike these cases, Stapper does not contend that the fire caused the garage door to malfunction or that the fire was aggravated by preexisting conditions at the home.

Thus, none of the cases that Genie cites, whether from California or another state, resolve the issue that we consider here. In the absence of controlling case authority, we have examined the policy considerations that motivate the firefighter's rule. Finding those considerations lacking under the facts of this case, we conclude that the firefighter's rule does not apply.

This conclusion does not mean that we have found that a duty of care exists. While many decisions state that when assumption of the risk applies,

"the defendant owes no duty of care" to the plaintiff (e.g., *Neighbarger, supra,* 8 Cal.4th at p. 538), those decisions reach that conclusion because the doctrine of assumption of the risk functions to *exonerate* a defendant from the usual duty of care, not because they conclude that defendant did not owe a duty of care *ab initio.* (See *id.* at p. 539.) Thus, our decision that the doctrine of assumption of the risk does not bar Stapper's current allegations against Genie does not resolve the issue of whether Genie owed Stapper a duty of care. The offer of proof was not intended to address that broader issue and therefore, given the posture of this case, that issue is not before us.

III. DISPOSITION

We reverse the judgment. Appellant shall recover her costs on appeal.

Haning, J., and Stevens, J., concurred.

A petition for a rehearing was denied August 9, 1999, and respondent's petition for review by the Supreme Court was denied October 27, 1999.